WILLIAM M. NARUS, CAB #243633
Acting United States Attorney
District of Oregon
**LEWIS S. BURKHART, OSB #082781**
Assistant United States Attorney
Lewis.Burkhart@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:24-CR-00408-IM-01 |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **JIMY ARIAS DIAZ,** | |
| Defendant. | |

**Introduction**

Defendant was a distributor for a large-scale drug trafficking organization (DTO) who transported fentanyl from Mexico to Portland at the direction of individuals higher up in DTO. For his role in the conspiracy, the government recommends a sentence of sixty-three months followed by five years of supervised release.

/ / / /

/ / / /

**Factual Background**

A.  **The Offense Conduct**

*Investigation Background*

Early in 2024, the DEA investigated a Honduran DTO that trafficked large amounts of fentanyl in the Portland, Oregon area. The initial investigation found there were three juvenile Hondurans working as the local sources of supply. DEA agents arrested those three Honduran juveniles and seized around 200,000 fentanyl pills and $65,000 in United States currency. The three juveniles were prosecuted in juvenile court, but were back on the streets only a few months later. (PSR ¶ 19).

During the summer of 2024, the DEA started a second investigation into two of the same juvenile Hondurans that were selling fentanyl in Portland again. Agents identified a residential home in Tualatin, Oregon where the juveniles lived. (PSR ¶ 20).

*Fall 2024 Investigation*

A DEA confidential informant identified an individual named "Jimi" receiving kilogram quantities of fentanyl. The confidential informant later identified Defendant as "Jimi" and the codefendant as the Honduran traffickers selling fentanyl. (PSR ¶ 21).

In October 2024, investigators covertly surveilled Defendant and the codefendant. They left the juvenile's home in Tualatin and met a suspected drug customer. Investigators viewed what they believed to be a drug transaction take place and stopped the drug customer. Investigators seized approximately 479 grams of fentanyl from the customer and then searched the customer's phone. Investigators located text messages of the customer ordering fentanyl from Defendant.

**Government's Sentencing Memorandum**                                              Page 2

On October 16, 2024, investigators executed a federal search warrant at the residence in Tualatin. Upon entry, investigators saw the codefendant and immediately detained him. The two juveniles and Defendant fled. Investigators were able to catch one of the juveniles and the Defendant. The second juvenile escaped. (PSR ¶ 24).

During a search of the Tualatin residence, agents located approximately 2.2 kilograms of fentanyl powder underneath a bathroom sink. In the master bedroom closet, agents located two backpacks containing over 170,000 fentanyl pills. (see photos below). In a bag in the hallway closet, investigators located approximately 506 grams of fentanyl powder. In separate locations, investigators located four clear plastic bags containing approximately 508 grams of fentanyl powder and $7,279 in United States currency. In total, investigators seized approximately twenty kilograms of fentanyl in pills and powder. (PSR ¶ 25).






*Total Seizure – approximately twenty kilograms of fentanyl powder and pills*

Agents interviewed Defendant. He admitted coming to Portland about twenty-five days ago. He initially denied selling drugs, but then confessed after being confronted by the agents. He admitted to selling drugs with his cousin (codefendant) to help his impoverished family in Honduras. (PSR ¶ 26).

**B. The Charges and Plea Agreement**

On January 10, 2025, Defendant pled guilty to Count 1 of the Information, which charges Conspiracy to Distribute Controlled Substances, in violation of Title 21, United States Code Section 846, 841(a)(1), (b)(1)(A)(vi). As part of the plea agreement, Defendant knowingly and voluntarily forfeit all right, title, and interest in and to all assets which are subject to forfeiture under 21 U.S.C. § 853; including the United States currency which Defendant admits constitute the proceeds of his criminal activity; or were used to facilitate his criminal activity in violation of 21 U.S.C. § 841(a)(1) as set forth in Count 1 of the Information.

A Preliminary and Final Order of Forfeiture has not yet been filed.

### C. Guidelines Computation

The parties have agreed and stipulated to an offense level of 36. USSG §2D1.1. (PSR ¶ 32).

Defendant has no known criminal history, so he qualifies for the two-level reduction for being a Zero-Point Offender and he also qualifies for a two-level reduction under Safety Valve. USSG §§ 4C1.1(a) and (b), 5C1.2(a)(1)-(5). (PSR ¶¶ 33, 38). Defendant has shown acceptance of responsibility, so a further three-level reduction applies, provided he continues to demonstrate acceptance of responsibility. USSG §3E1.1(a),(b) (PSR ¶ 38 – 39). The government recommends a final two-level reduction to the offense level for Defendant's willingness to waive indictment and resolve the case prior to the second trial setting. 18 U.S.C. § 3553(a).

| Count 1: 18 U.S.C. § 846, 841(a)(1) – Conspiracy to Distribute Controlled Substances | | |
|---|---|---|
| USSG § 2D1.1(a)(5)(ii) | Base Offense Level | 36 |
| USSG §§ 4C1.1(a), (b) | Zero-Point Offender | -2 |
| USSG §§ 5C1.2(a)(1)-(5) | Safety-Valve | -2 |
| USSG § 3E1.1(a), (b) | Acceptance of Responsibility | -3 |
| 18 U.S.C. §3553(a) | | -2 |
| | **Adjusted Offense Level** | 27 |

### D. Criminal History

Defendant has no known criminal history, so his criminal history score is 0 and the resulting criminal history category is I. USSG §5A (PSR ¶ 45).

### E. Government's Recommended Sentence

The advisory guideline range is sixty-three to seventy-eight months, factoring the recommended adjustments. While not bound by the Sentencing Guidelines, district courts must consult the guidelines and take them into account when sentencing. *United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738, 767 (2005). The sentencing guidelines are advisory and one of the

statutory factors this Court must consider when imposing a sentence. *See* 18 U.S.C. § 3553(a)(4); *United States v. Rita*, 551 U.S. 338, 347-48 (2007). The guideline serves as "the starting point and the initial benchmark" in every sentencing proceeding and "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Gall v. United States*, 552 U.S. 38, 49 (2007); *Rita*, 551 U.S. at 350. The guidelines serve as a "lodestone" at sentencing, and "cabin" or "anchor" a sentencing court's discretion. *Peugh v. United States*, 569 U.S. 530, 531 (2013). While advisory, the Supreme Court has observed that, "[c]ommon sense indicates that in general, this system will steer district courts to more within-guidelines sentences." *Id*.

Defendant worked for a DTO dealing massive amounts of fentanyl in the Portland, Oregon area. The seizure of fentanyl during the October search warrant was staggering. However, there is no evidence to support Defendant had an increased role in the DTO. Based on his admissions and the confidential informant, Defendant worked as a drug distributor for only about one month.

The two juvenile offenders are unfortunate examples of a well-meaning state juvenile system that is not set up to deal with juveniles that have zero interest in changing their actions. Within less than ten months, the two juveniles were caught by law enforcement with over 200,000 fentanyl pills and then again with approximately twenty kilograms of fentanyl powder and pills. These are not two children that made an immature mistake. They are hardened fentanyl drug dealers that will continue to be released and poison the community until they turn eighteen and are sentenced as adults. Further, DTO's are well aware of Oregon's lenient juvenile system and exploit the juvenile system by using minors to proliferate fentanyl in Oregon.

To the defendant's credit, he quickly accepted responsibility for his actions, waived indictment and promptly resolved his case. This DTO operated long before Defendant's arrival in Oregon and unfortunately is likely still operating. Defendant made the choice to sell fentanyl to make money for his family in Honduras. He made the selfish decision to make his family's financial situation better while preying on addicts in Oregon. He chose poorly and faces a significant sanction.

Under the facts of this case, a sixty-three-month sentence, coupled with a five-year term of supervised release, and a $100 special assessment, satisfies the requirement of 18 U.S.C. § 3553(a) as a "sentence sufficient, but not greater than necessary" to meet the purposes of § 3553(a)(2).

**Conclusion**

Based on the foregoing, the government recommends a sixty-three-month sentence with five years of supervised release.

Dated: May 5, 2025

Respectfully submitted,

WILLIAM M. NARUS, CAB #243633
Acting United States Attorney

*/s/ Lewis S. Burkhart*
LEWIS S. BURKHART, OSB #082781
Assistant United States Attorney